[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by Linda J. Buckley and Joseph W. Buckley to terminate the parental rights of Tammy Moreau, the mother of Ashley Moreau. The parental rights of the putative father, if any, were extinguished by his consent on November 13, 1990.
The salient procedural background of this case is as follows:
Ashley Marie Moreau was born January 4, 1988 to Tammy Sue Moreau. After initial attempts to care for her in the maternal parents' home, the child was voluntarily placed in foster care by the mother from approximately March 1, 1988 until April 26, 1988.
During the month of April, 1988, a DCYS social worker assisted the mother in efforts to be reunited with the child and on April 26, 1988, mother and child took up residence together in Bantam with the Perkins family.
The respondent unilaterally terminated her participation with DCYS on April 27, 1988. She was advised that DCYS did not consider the relationship terminated. The mother was unavailable to all subsequent inquiries by DCYS.
On May 12, 1988, the respondent contacted her sister, Linda Buckley and asked Mrs. Buckley to provide temporary care for the child. The respondent stated he was unable to care for the child and attributed that fact to a collar bone injury received in an automobile accident on or about that day.
On May 13, 1988, Mrs. Buckley took the child into her home and has continued the uninterrupted custody of her to this date. CT Page 2506
On June 6, 1988, Linda Buckley petitioned the Litchfield Probate Court for temporary custody of Ashley Moreau. That application was granted on June 17, 1988.
On October 4, 1988, Linda Buckley's application for removal of Tammy Moreau as guardian of Ashley Moreau was granted in the Litchfield Probate Court. At that time the court set forth specific visitation rights in the mother, Tammy Moreau, providing, inter alia, that visitation in the mother was to be prearranged with the Buckleys by phone, restricted to the Buckley home and limited to one visit per week until further order of that court.
On March 8, 1989, a petition for reinstatement as guardian was filed by Tammy Moreau in the Litchfield Probate Court. That application was denied on March 29, 1989. The court noted that the visitation orders were to remain as set forth in its decree of October 4, 1988.
On August 16, 1989, Linda and Joseph Buckley filed an application for termination of Tammy Moreau's parental rights and also an application for adoption by a relative in the Litchfield Probate Court.
On May 15, 1990, a motion to transfer the application for termination of parental rights was filed by Tammy Moreau in the Litchfield Probate Court. That motion was granted on May 16, 1990, and is the subject of the instant proceedings.
The court finds that no other action is pending in any other court affecting the custody of this child.
It is alleged in this petition that Tammy Sue Moreau has denied Ashley Marie Moreau by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for her physical, educational, moral or emotional well being.
It is alleged that this ground has existed for more than one year. In light of the evidence produced at trial, which will be reviewed hereafter, this court finds that the petitioners have failed to prove by clear and convincing evidence each and every allegation of the petition.
Acts of Commission or Omission
Evidence adduced at trial establishes that the mother voluntarily placed the child into foster care within two months after its birth. With the intervention of representatives of DCYS, which had received a referral concerning the child, the mother made arrangements to live with the child in the home of a Bantam family. That arrangement lasted approximately 17 days during which time the mother advised DCYS that she would not continue to cooperate with that agency.
On June 13, 1988, the mother sought and obtained the transfer of CT Page 2507 custody to her sister, the petitioner herein, on what was to be a temporary basis. Custody has remained in the petitioner from that date to the present.
The mother's participation in the child's daily life was sporadic, at best, during the following several months. During that time, on June 17, 1988, the Litchfield Probate Court granted Mrs. Buckley's application for orders of temporary custody.
As previously noted, on October 4, 1988, the Litchfield Probate Court granted the petition by Mrs. Buckley to terminate the mother's guardianship and guardianship was granted to Mrs. Buckley. Of considerable significance to this case was the establishment on October 4, 1988, of specific visitation orders regarding Tammy Moreau.
From that date on, depending upon the import to be given to those visitation orders, the mother was placed on notice of what was required of her as a prerequisite for visitation or precluded to a large extent from the option of providing care, guidance and control of her daughter.
Evidence at trial established that, by and large, the number of actual visits by the mother fell considerably short of the number of opportunities. They were infrequent for long periods and then faithfully maintained for shorter periods.
The testimony further established that the meetings were frequently for less than the two hours permitted.
The testimony further established that during the periods preceding and following the implementation of the visitation schedule, the mother made extremely few inquiries by phone or otherwise concerning the care and well being of her daughter and only on rare occasions, usually on a birthday or holiday, tendered any gifts or donations of clothing and food for her daughter's welfare.
In the form of rebuttal and through the witnesses called by the petitioners, the mother sought to and, to some degree, did establish that she was frequently made to feel unwelcome upon her visits, was turned away when her arrival was as little as one-hour off schedule, and was actually denied visitation on the child's birthday because she had enjoyed her one day of visitation previously that week.
Here lies the decisive issue concerning the respondent mother's acts and omissions in this case.
At what point can a parent, enjoined by court order, lacking in steady income and to considerable degree, unwelcome by the custodians of her child be deemed to be capable of denying her child the care, guidance or control to the degree contemplated in Sec. 45a-717 (f)(2). CT Page 2508
Argument can be made that the respondent holds the power to reform her life and rehabilitate herself sufficiently to stabilize her interpersonal relationships, obtain meaningful employment and establish a safe and secure home for herself and her child. That determination is a question of fact for the court to determine on the evidence presented.
The burden remains on the petitioners to establish the criteria concerning parental acts and omissions by clear and convincing proof. This is so for valid reasons as caselaw has consistently held that the interest of parents in their children is a fundamental constitutional right that "undeniably warrants deference and, absent a powerful countervailing interest, protection." Stanley v. Illinois, 405 U.S. 645, 651,92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).
The facts presented to this court might best support a claim under45a-717 (f)(3) that due to the conduct of the respondent no ongoing parent-child relationship exists or has ever existed between mother and child in this case. AS that was not specifically alleged in the petition, it cannot be considered by this court. Additionally this court is bound by the allegations presented against the respondent up to the date of the petition. In Re Luke G., 40 Conn. Sup. 316. This court is aware of the need to bifurcate the issues of termination from the questions concerning the ultimate placement of the child.
The threshold question of whether cause for termination under the statute has been established must be addressed before the court can proceed to determine what is best for the child. The best interest of the child, as such, is not an ingredient of grounds for termination and is not involved in this threshold question. In Re Juvenile Appeal (Anonymous),177 Conn. 648, 673.
This court finds that the petitioners have not met their burden of proving by clear and convincing evidence that the statutory ground for termination under Sec. 45a-117 (f)(2) has been satisfied.
For that reason the court is precluded from considering the evidence concerning the beneficial consequences of the child's ongoing relationship with the petitioners.
As in the case of In Re Jessica M., 217 Conn. 459 (1991), it is important to note what has not been decided herein. No change or modification of Ashley Moreau's present guardianship is to result from the order of this court.
The "best interests of the child" analysis exists, is relevant, and perhaps dispositive, in matters of visitation and in any proceeding to transfer guardianship.
DOHERTY, J. CT Page 2509